IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT GALLEGO,

    Petitioner,                    No. CIV S-01-1255 DFL JFM P

    vs.

SILVIA GARCIA, Warden,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

                                  /

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction on charges of possession of tar heroin while in prison. In addition to other prior convictions, petitioner has sustained a prior conviction for possession of a controlled substance for sale in 1994. (Answer at 2.) Petitioner claims that his constitutional rights were violated by the trial court's refusal to allow the defense to present a crucial witness on surrebuttal.[1]

/////

/////

---

[1] This action is proceeding on the amended petition filed March 12, 2002.

1

1     FACTS[2]

2     The events underlying this appeal took place on July 9, 1997. At that time, correctional peace officer Jesse Ramsey was watching the exercise yard at California State Prison, Sacramento, also known as "New Folsom," when he received a radio call from Sergeant Anthony Gold, instructing him to pay particular attention to a group on inmates in front of the work center. Gold suspected that the [petitioner] might be involved in illicit activity. After watching the [petitioner] for approximately five minutes, Ramsey suspected [petitioner] was selling drugs. Accordingly, he and cadet in training Alfonso Petty approached [petitioner] and informed him that they were going to search him. As a result of this search, Ramsey found a cellophane bindle in the right front pocket of [petitioner's] jeans, which ultimately proved to contain tar heroin.

[Petitioner] contended he did not know that the heroin was in the pants pocket, as he had just changed into those pants from the dirty laundry immediately prior to being searched. In his own defense, [petitioner] then wove a tale of illicit pruno[3] manufacturing, slopping drinking habits and contraband-filled dirty laundry bins. This version of events and circumstances was supported in various parts by some of [petitioner's] fellow inmates.

[Petitioner] was apparently an adept pruno maker, but not an adept pruno drinker as he managed to spill a good portion of a bag of pruno all over his clothes on July 9, 1997. After spilling the pruno on his clothes, it was suggested to [petitioner] by his fellow inmates that he change his clothes since he stank of pruno and could e disciplined for that. Taking the sage advice of his fellow inmates, [petitioner] proceeded to the recycling area and took a pair of shorts out of the clothing cart. Although he was advised that the clothes in the cart he was digging through contained dirty clothes, he decided to change into those dirty clothes anyway.

[Petitioner's] fellow inmates largely corroborated this story. In addition, some of his fellow inmates testified that it was not at all uncommon for various items of contraband to be found in the recycling area, and specifically in the laundry carts. Inmate Stevens testified that although he had never personally found drugs in the recycling area, weapons were sometimes found. Inmate Holmes, who was a laundry cart clerk at the prison, testified that he

---

[2] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Gallego, No. 3 Crim C032900 (March 31, 2000), a copy of which is attached as Exhibit 1 to Respondent's Answer, filed March 31, 2000.

[3] Pruno is a wine manufactured in prison using tomato paste, sugar and plastic bags. The ingredients are mixed in the plastic bags, put in hot water in the toilet in the manufacturer's cell, and placed in bags in the toilet where the fermentation process takes place.

found drug paraphernalia and drugs, including tar heroin, in the pockets of clothing "all the time." Inmate Holmes also testified that rather than turning in the drugs to the correctional officer on duty, he generally just threw them away to avoid coming under suspicion himself for being in possession of drugs.

On rebuttal, the prosecution offered the testimony of various correctional officers on a number of issues, including whether it was common to find contraband, specifically drugs, in the discarded clothing in the laundry. Officer Waits testified that he was unaware of drugs being found within the discarded clothing, although he was aware that various weapons had been found in the recycling area, although not in the discarded clothing. Officer Blog, a laundry worker at the New Folsom work center, also testified that he had never found illicit drugs in the pockets of dirty laundry and had never had any inmates turn in any drugs which had been found in the dirty laundry.

The defense then sought to introduce evidence on surrebuttal. The [petitioner] was permitted to testify again as to the conditions under which he worked in the laundry, and to rehabilitate himself as to two issues upon which he had been impeached.[4]

The defense was not, however, permitted to call an inmate Darrell Dotson to the stand in surrebuttal. Inmate Dotson had previously been the subject of a motion *in limine* wherein the court refused to issue an order to produce Dotson, ruling that his proposed testimony was not probative and was cumulative.[5] In the context of the request to have Dotson produced for surrebuttal, the proffer was that Dotson would testify that "he's found contraband every day in some form or another, either in the clothing or washers or dryers [sic] . . . ." The court denied the request, finding that the testimony was cumulative and was not proper surrebuttal, as it could have been offered in [petitioner's] case in chief.

(People v. Gallego, slip op. at 2-5.)

PROCEDURAL HISTORY

---

[4] [Petitioner] had testified that he was with an inmate Peerson on the day of the search and arrest. The prosecution later established that Peerson was not at New Folsom Prison on July 9, 1997. [Petitioner] also clarified his testimony with regard to his response upon Ramsey's discovery of the heroin.

[5] The proffer of Dotson's testimony during the motion *in limine* was first that he had been charged with the same type of offense as the [petitioner,] possession of drugs in prison, and they were drugs which were found in clothes which he had taken from the dirty laundry bin. His case had been dismissed. Secondarily, he was being offered to testify that when he was working in the laundry, he found contraband in the laundry every day.

1         On May 8, 1998, complaint number 98F00889 was deemed to be an information and filed in Sacramento Superior and Municipal Courts. The complaint charged petitioner with possessing heroin in state prison, a violation of California Penal Code § 4573.6. The complaint further alleged five prior felony convictions, two of which were alleged as serious felonies (Penal Code § 1197.7, subd.(c)) within the meaning of the "three strikes" recidivist sentencing law, §§ 667, subdivisions (b) - (i) and 1170.12. Four prior convictions with prior prison terms and re-offenses within five years (§ 667.5, subd.(b)) were also alleged. (CT 10-13.)

        On April 21, 1999, after an eight-day jury trial, petitioner was found guilty of possessing heroin in state prison. The jury also found true the special allegations of prior convictions and prison terms. (CT 126-28; 131-34.)

        Petitioner was sentenced, pursuant to the three strikes sentencing law to an aggregate term in state prison of 29 years to life, calculated as a 25 years to life sentence for the current offense, plus one year for each of the four prior convictions involving a prior prison term. (CT 128-30.)

        Petitioner appealed the sentence to the California Court of Appeal, Third Appellate District, raising one issue: whether the trial court committed reversible error when it precluded the defense from presenting a surrebuttal witness. The state appellate court rejected this claim. On June 28, 2001, petitioner filed the instant petition for writ of habeas corpus. On March 12, 2002, he filed an amended petition.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

        Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

Petitioner claims that the trial court committed reversible error when it precluded a crucial defense witness on surrebuttal. (Amended Petition at 5.)

5

In the amended traverse, petitioner states that inmate Dotson was subpoenaed to attend trial in this matter. Some time after the subpoena issued, inmate Dotson was transferred. The trial judge subsequently refused to enforce the subpoena of inmate Dotson. Petitioner contends that Dotson was the best witness the defense could get because Dotson had also been charged with possession of drugs, but because Dotson was able to prove he had recently changed clothes in the laundry area, his charges were dismissed. Petitioner contends that Dotson would have been a particularly compelling witness because Dotson is black and petitioner is white, and Dotson had nothing to gain from testifying at petitioner's trial.

Petitioner argues that the trial judge denied the defense request for an order to CDC to produce inmate Dotson in time for the defense's case in chief. Petitioner argues the trial court then compounded the problem by denying the defense's motion for Dotson as a surrebuttal witness, chiding defense counsel for not calling Dotson in the case-in-chief. Thus, petitioner states that although by law the court may have been correct to find that Dotson's testimony did not qualify for surrebuttal, it was the court's initial action in refusing to enforce the subpoena that deprived petitioner of presenting a defense.

Petitioner argues that Dotson's testimony would not have been cumulative because Dotson was the only witness who would have testified that he also had been found with drugs in a pair of pants that he had just removed from the recycling bin. (Traverse at 7.) Dotson would also have testified that he had been searched shortly thereafter, that contraband was found in his pocket, and that Dotson had also been charged with possession, testimony that none of the other defense witnesses had given. (Id.)

III. State Court's Opinion

The state court addressed this claim as follows:

> In his case in chief, the [petitioner] introduced testimony of his fellow inmates and of himself that contraband of various types, including tar heroin, was frequently found in the clothing in the dirty laundry bins. On cross-examination of these inmates, the prosecution introduced evidence of their various convictions for

       purposes of impeachment. Then in its rebuttal case, the prosecution introduced the testimony of two officers that contradicted the testimony of the inmates. Specifically, [Watts][6] and Blog testified that they were unaware of drugs being found in the laundry at Folsom Prison. In arguing that the testimony of inmate Dotson was appropriate surrebuttal, [petitioner] argued that the testimony of each of his other witnesses had been impeached by their criminal records and only one had testified as to working in the laundry and finding drugs there. [Petitioner] continues that argument here and it remains unpersuasive.

       As the trial court properly concluded, the testimony of Dotson could have been appropriately introduced in the defense case in chief. The matters on which [petitioner] sought surrebuttal were not new matters introduced by the prosecution for the first time on rebuttal. In fact, they were matters first introduced by the [petitioner] in his case in chief; specifically, whether or not contraband, including tar heroin, was regularly or ever found in the dirty clothes in the laundry at Folsom Prison. A defendant is not entitled to present surrebuttal evidence on matters he himself introduced into the trial. The fact that the prosecution offered evidence in rebuttal that contradicted the evidence presented by the defense in its case in chief does not, in and of itself, entitle the [petitioner] to surrebuttal.

       [Petitioner's] contention that he is entitled to surrebuttal because his inmate witnesses were impeached by their criminal records is highly disingenuous. Certainly, the criminal records of these witnesses should not have been any surprise to the [petitioner]. These were, after all, witnesses who were incarcerated in state prison.

       In sum, we can see no abuse of discretion in the trial court's refusal to allow Dotson to testify in surrebuttal as to matters which were initially introduced by the defense in its case in chief, and on which previous witnesses had already testified.

(People v. Gallego, slip op. at 6-7.)

IV.   Analysis

       Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." Washington v.

---

[6] The opinion cites "Holmes," rather than Watts, which appears to be a typographical error. Holmes was an inmate witness who testified drugs were found in pockets all the time. (RT 574.) Watts was a correctional officer who, along with Officer Blog, testified that no drugs had ever been found in discarded clothing or laundry. (RT 693, 701; RT 707, 711.)

7

Texas, 388 U.S. 14, 19 (1967).  See also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  "However, that right is not unlimited." Greene v. Lambert, 288 F.3d 1081, 1090 (9th Cir. 2002).  Thus, a state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998).  See also Crane, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); Greene, 288 F.3d at 1090.  In addition, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000).  See also Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000); Montana v. Egelhoff, 518 U.S. 37, 53 (1996) (plurality opinion suggesting that any justification by the state court for exclusion of evidence is sufficient to satisfy due process).

> [B]oth the defendant and the state have important and legitimate interests; both must be evaluated and weighed. (Footnote omitted.) The exclusion of significant defense evidence implicates constitutional values.  When due process issues are presented, the court must balance the importance of the evidence against the state interest in exclusion.  In evaluating the significance of the evidence, the court should consider all of the circumstances:  its probative value on the central issue, its reliability, whether it is capable of evaluation by the finder of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense.  The weight of the state's interest likewise depends upon many factors.  The Court must determine the purpose of the rule, its importance, how well the rule implements this purpose, and how well the purpose applies in the case at hand.  The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, in excluding unreliable or prejudicial evidence.

Perry v. Rushen, 713 F.2d 1447 (9th Cir. 1983).

1   On April 7, 1999, the trial court heard defense counsel's motion in limine
2 concerning two inmate witnesses who had been transferred.  (RT 30-31.)  Defense counsel
3 sought the testimony of inmate Darryl Dotson and stated Dotson would testify "I was charged
4 with the same kind of offense and my case was dismissed.  I got clothes out of the yard, put them
5 on, and was searched and drugs were found on me."  (RT 31.)  The prosecution objected that
6 Dotson's testimony was irrelevant, cumulative and was outweighed by the burden and expense of
7 bringing Dotson in to testify.  (RT 32.)  When the trial court inquired what the probative value of
8 Dotson's testimony was, defense counsel responded that Dotson did the same thing as petitioner
9 – changed clothes in the area, and witnessed the incident where petitioner was searched by
10 Correctional Officer Ramsey and had been previously assigned to work in the laundry center and
11 would testify that, while working in the laundry, he found some sort of contraband every day in
12 clothing or in the washers and dryers.  (RT 32.)  Defense counsel confirmed that the clothing
13 that's washed comes from the recycle area where petitioner picked up the clothing to change into.
14 (RT 33.)

15   At this point, the trial judge confirmed with defense counsel that "the basic
16 defense is [petitioner] didn't know they were there?"  (RT 33.)  Or, put another way, "Not within
17 the knowledge of the presence of the narcotics."  (RT 33.)  The trial judge then said he did not
18 see how Dotson helped that defense.  (RT 33.)  Defense counsel responded, "Dotson helps it by
19 saying that you pick up a pair of pants and change.  You may not know what's in the pocket."
20 (RT 33.)  The trial judge explained that "anybody could testify to that."  (RT 33.)  Defense
21 counsel argued that the officers would not testify to that, claiming the officers would testify that
22 "everybody's going to check the pockets.  They are not going to put . . . on pants that have
23 contraband in them."  (RT 33.)  Defense counsel continued his efforts to persuade the judge, but
24 the trial judge found that Dotson's testimony was not probative.  (RT 34.)

25   Petitioner initially identified 12 witnesses.  (RT 34.)  Ultimately, seven inmate
26 witnesses, plus petitioner, testified for the defense.  (Duvall, RT 413; O'Neel, RT 442; Kirkland,

1  RT 467; Bernich, RT 507; Stephens, RT 533; Langston, RT 559; Holmes, RT 571; Gallego, RT
2  582.) Of the seven inmate witnesses, all except Holmes witnessed part of petitioner's conduct
3  that day.
4      Inmate Stephens testified that he personally had not found drugs in the pockets
5  while working in the laundry. (RT 538-39.) Outside the presence of the jury, just prior to Inmate
6  Holmes taking the stand, the trial judge stated,

> Well, I know we had discussed it off the record, that there was no
> probative value to hold the testimony about the laundry, but there
> has been testimony about two inmates that clothes from the
> recycling bin ended up in the laundry, probably it is now.

(RT 571.) Inmate Holmes testified that drug paraphernalia was found in pockets in the laundry all the time. (RT 574.) Holmes identified needles, actual drugs, marijuana, heroin, and crank as items that were found. (RT 574.) Holmes stated that tar heroin was found in the laundry all the time. (RT 574.) Usually, these drugs were found in the pockets, he added. (RT 575-76.)

Thus, a review of the record reveals that Inmate Holmes first testified about finding drugs in pockets in the laundry during petitioner's case-in-chief (RT 574), and the prosecution called Officers Watts and Blog to rebut that claim (RT 693,707). Thus, defense counsel's attempt to gain Dotson's testimony on surrebuttal was not appropriate. "If on rebuttal the prosecution introduces evidence that merely contradicts the [petitioner's] evidence, then it is not considered a new or different matter." (Opinion at 5-6.)

Moreover, the proffered testimony of Dotson was cumulative because Dotson would testify that he found contraband in pockets in the laundry, which is what Inmate Holmes previously testified to. Thus, Dotson's proposed testimony on the central issue herein, whether contraband is found in pockets in the laundry, was cumulative. In addition, Dotson's testimony concerning petitioner's conduct on the day in question was also cumulative because six other inmates testified about petitioner's conduct on that day. Dotson was not any more credible than Holmes because he also was a prison inmate and would be impeached with his own criminal

convictions. By resting its case before revisiting the issue of Dotson's testimony, the defense bypassed any opportunity to incorporate Dotson's testimony in its case-in-chief. Thus, the trial court did not err by excluding the testimony when offered as surrebuttal.

Because Dotson's testimony was cumulative and was not properly brought as surrebuttal evidence, the trial court did not abuse its discretion in excluding Dotson's testimony. See United States v. Butcher, 926 F.2d 811, 817 (9th Cir. 1991).

On the other hand, Dotson was the sole witness prepared to testify that he got clothes out of the yard, put them on, was searched and drugs were found, yet his charges were dropped. However, counsel for petitioner failed to pursue this in his case-in-chief, even acknowledging during his motion to call Dotson as a surrebuttal witness that:

> In the process of in limine discussions before trial, it was determined that Mr. [Dotson] was not needed for the trial and the People moved to exclude him and I kind of . . . concurred with that.

(RT 714.) Petitioner could have moved again, before the defense rested, to call Dotson to the stand to pursue this line of questioning, particularly if trial counsel felt this was a key component of the defense case. Petitioner did not. Moreover, even if Dotson had been called to testify as to his own experience, it would not necessarily have demonstrated petitioner was similarly situated. The jury could have decided Dotson's charges were dropped because they were untrue and petitioner's charges were not dropped because they were true.

In addition, a review of petitioner's case-in-chief reflects that this portion of Dotson's testimony did not constitute a major part of the attempted defense.

The evidentiary ruling of the trial judge appears to this court to have been proper but, more importantly on federal habeas corpus, it did not cause the trial to be fundamentally unfair. The Court of Appeal's conclusion that the trial court did not abuse its discretion by refusing to allow Dotson to testify in surrebuttal is not contrary to United States Supreme Court

/////

law nor is it based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d). Accordingly, this claim should be denied.

V.  Miscellaneous

In his traverse, petitioner also suggests Officer Ramsey may have lied at trial about the allegedly suspicious activity in which petitioner may have engaged immediately preceding the search, pointing out that all of the initial documentary evidence concerning the incident described the search as random.  Although Officer Ramsey's report in the Rules Violation concerning the incident does not reflect any suspicious activity on the part of petitioner, neither does it state the search was random.  However, whatever precipitated the search is not relevant to whether the trial court erred in precluding Dotson as a surrebuttal witness at trial.

Finally, petitioner raises new claims in his amended traverse that were not raised in his amended petition nor in state court proceedings below, for example, ineffective assistance of counsel, prosecutorial misconduct, etc.  A traverse is not the proper pleading to raise additional grounds for relief.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507-08 (9th Cir.1995).  In general, claims not raised in the petition are not cognizable on appeal.  See United States v. Allen, 157 F.3d 661, 667 (9th Cir.1998) (citing Cacoperdo, 37 F.3d at 507).  Thus, the court will not address these additional claims raised solely in the amended traverse.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 16, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

/001; gall1255.157